UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | | |
|---|---|---|
| PEARL DE LEON, on behalf of herself and all others similarly situated, | § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-01574-N |
| | § | |
| MEDICAL CITY HEALTHCARE and MEDICAL CITY LAS COLINAS, | § § § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

## I. INTRODUCTION

1.1     Plaintiff Pearl De Leon ("Plaintiff"), on behalf of herself and all others similarly situated, files this First Amended Class Action Complaint against Defendants Medical City Healthcare and Medical City Las Colinas (collectively "Defendants"), challenging Defendants' unfair, false, misleading and deceptive practice of charging their emergency care patients a substantial, but undisclosed, emergency room facility fee (hereinafter, "Surcharge"), which is added on top of the charges for the individual items of treatment and services provided.[1] This Surcharge, which is essentially a "cover charge" or "surcharge" that purportedly covers the "overhead charges" for operating the emergency room facility, if it were to be properly disclosed to emergency room patients prior to services being rendered that trigger the Surcharge, would be a substantial factor in a patient's decision to remain at one of Defendants' emergency room facilities or seek less costly treatment elsewhere.    Nevertheless, Defendants intentionally hide and conceal the Surcharge from their emergency room patients.

---

[1]  The internal charge code that Defendants use to reference this Surcharge, known in hospital circles as a "Current Procedural Terminology" or "CPT" Code, is set at one of five levels, depending on the level of medical services provided, and is designated in Defendants' billing system as CPT Code 99281, 99282, 99283, 99284, or 99285.

1.2    Using the brand name "Medical City Hospitals," Defendant Medical City Healthcare operates approximately thirteen hospitals with emergency departments in the State of Texas.[2]  This complaint applies to patients who received treatment at any of these Medical City Hospital emergency departments and who were billed a Surcharge. By this petition, Plaintiff seeks declaratory and injunctive relief on the basis that these undisclosed Surcharges were unauthorized by contract, unconscionable and violative of the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 *et seq.* ("DTPA").

## II. PARTIES

2.1    Plaintiff Pearl De Leon, a Texas citizen and resident of Dallas County, was admitted to, treated at, and released from Medical City Las Colinas, a Medical City Hospital located in Dallas County, Texas.

2.2    Defendant Medical City Healthcare is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Irving, Texas, that owns, operates and/or provides management and billing services to approximately 13 hospitals with emergency department facilities in Texas (referred to herein as "Medical City Hospitals"), including Medical City Las Colinas.  "Medical City Healthcare" was originally named as a defendant herein pursuant to the provisions of Texas Rule of Civil Procedure 28.  Plaintiff is informed and believes that "Medical City Healthcare" is an assumed name of North Texas Division, Inc., a Texas corporation, but specifically invokes her right to institute suit against whatever entity was conducting

---

[2] The website for Medical City Healthcare lists the following Medical City hospitals: Medical City Alliance, Medical City Arlington, Medical City Children's Hospital, Medical City Dallas, Medical City Denton, Medical City Fort Worth, Medical City Frisco, Medical City Las Colinas, Medical City Lewisville, Medical City McKinney, Medical City North Hills, Medical City Plano, and Medical City Weatherford.

business using the assumed or common name of "Medical City Healthcare" with regard to the events hereinafter described. Plaintiff notes that "Medical City Healthcare" can be identified readily through discovery and specifically invokes her right under Texas Rule of Civil Procedure 28, the Federal Rules of Civil Procedure and federal law to have the true name of this party substituted at a later time if necessary.

2.3    Defendant Medical City Las Colinas is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Irving, Texas, that owns, operates and/or provides management and billing services to one or more hospitals in Texas, including Medical City Las Colinas ("Hospital"). "Medical City Las Colinas" is named as a defendant herein pursuant to the provisions of Texas Rule of Civil Procedure 28. Plaintiff is informed and believes that "Medical City Las Colinas" is an assumed name of Columbia Medical Center of Las Colinas, Inc., a Texas corporation, but specifically invokes her right to institute suit against whatever entity was conducting business using the assumed or common name "Medical City Las Colinas" with regard to the events hereinafter described. Plaintiff notes that "Medical City Las Colinas" can be identified readily through discovery and specifically invokes her right under Texas Rule of Civil Procedure 28, the Federal Rules of Civil Procedure and federal law to have the true name of this party substituted at a later time if necessary.

### III.  JURISDICTION AND VENUE

3.1    The amount in controversy exceeds this Court's minimum jurisdictional requirements.

3.2    This Court has exercised diversity jurisdiction over this matter after Defendants removed it to this honorable court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453 and 1711-15 (CAFA).

## IV.  FACTS

**A.**    **AGENCY ALLEGATIONS**

4.1    Plaintiff is informed, believes and alleges that in committing the acts alleged herein each named Defendant is and was the agent of the other named Defendant and acted with the knowledge, consent, permission, cooperation and authorization of the other named Defendant.

4.2    Plaintiff is informed, believes and alleges that Defendant Medical City Healthcare exercises control over its 13 subsidiary hospitals by developing and controlling their internal policies and operations relating to pricing, billing, signage, and collection practices, amongst others.

4.3    Plaintiff is informed, believes and alleges that at Defendant Medical City Healthcare's direction and approval, each Medical City Hospital represents itself as being part of the Medical City Healthcare system by using the brand name "Medical City" in its name and identifying itself as part of the Medical City Healthcare system.

4.4    At all relevant times each and every individual Medical City Hospital included in this case was and is the agent of Defendant Medical City Healthcare.  In committing the acts and omissions alleged herein each and every hospital facility acted in the course and scope of its agency and as a subsidiary of Medical City Healthcare, and was acting with the consent, permission, authorization, satisfaction and knowledge of Medical City Healthcare and perpetrated and/or aided and abetted the wrongdoings described herein.  Plaintiff is informed, believes and alleges that all actions of each Medical City Hospital facility described herein was ratified and approved by Defendant Medical City Healthcare, or its officers, directors, controlling persons, agents, partners or joint venturers.

**B.    GENERAL ALLEGATIONS**

4.5    Plaintiff is informed, believes and alleges that at all relevant times all Medical City Hospitals used a form "Conditions of Admission and Consent for Outpatient Care" contract (hereinafter "Contract") drafted by Defendant Medical City Healthcare, the terms of which are not dictated by statute or otherwise, and which all emergency care patients (or their agents) were presented with and asked to sign.

4.6    Plaintiff is informed and believes that Defendants' form Contract is substantially similar for all Medical City Hospitals and includes a "Financial Agreement" provision which reads, in pertinent part, as follows:

> **Financial Agreement.**  In consideration of the services to be rendered to Patient, Patient or Guarantor individually promises to pay the Patient's account at the rates stated in the hospital's price list (known as the "Charge Master") effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the Patient's account. Some special items will be priced separately if there is no price listed on the Charge Master.  An estimate of the anticipated charges for services to be provided to the Patient is available upon request from the hospital. Estimates may vary significantly from the final charges based on a variety of factors, including, but not limited to, the course of treatment, intensity of care, physician practices, and the necessity of providing additional goods and services. ...[¶]
>
> The hospital will provide a medical screening examination as required to all Patients who are seeking medical services to determine if there is an emergency medical condition without regard to the Patient's ability to pay. If there is an emergency medical condition, the hospital will provide stabilizing treatment within its capacity. However, Patient and Guarantor understand that if Patient does not qualify under the hospital's charity care policy or other applicable policy, Patient or Guarantor is not relieved of his/her obligation to pay for these services. ... [¶]
>
> I also understand that, as a courtesy to me, the hospital may bill an insurance company offering coverage, but may not be obligated to do so. Regardless, I agree that, except where prohibited by law, the financial responsibility for the services rendered belongs to me, the Patient or Guarantor. I agree to pay for services that are not covered and covered charges not paid in full by insurance coverage including, but not limited to, coinsurance, deductibles, non-covered benefits due to policy limits or policy exclusions, or failure to comply with insurance plan

requirements.

However, the Contract makes no mention and provides no disclosure of any Surcharge that will be added to a patient's bill in addition to the charges for the specific items of treatment or services provided. Further, neither the Surcharge nor Defendants' intention to add a Surcharge to an emergency patient's bill is disclosed on signage posted in or around Defendants' emergency rooms, or disclosed verbally during the emergency room registration process.

4.7     Despite the lack of any disclosure of a Surcharge, at all relevant times Defendants have had a practice of charging emergency care patients a hidden and undisclosed Surcharge set at one of five levels according to the seriousness and complexity of the patient's condition, with such level being based on an undisclosed formula or algorithm and determined after treatment is rendered.   This Surcharge was imposed in addition to the itemized charges for the individual items of treatment or service provided to the patient.   For example, for Medical City Las Colinas the 2019 Surcharge amounts are as follows: Level 1: $692; Level 2: $972; Level 3: $1,597; Level 4: $2,249; and Level 5: $3,525.   Patients have a right to know, prior to treatment, that a Surcharge will be added to their bill, in addition to the charges for specific items of treatment or services.

4.8     Plaintiff is informed, believes and alleges that all of Medical City Hospitals included in this action likewise charged a similar Surcharge to their emergency department patients' bills.

4.9     Plaintiff is informed, believes and alleges that this substantial Surcharge is not based on the individual items of treatment or services provided to the patient, such as the individual charges for X-rays, laboratory services, sterile supplies, drugs, etc.

Rather, the Surcharge is added to a patient's bill simply for presenting and being seen at one of Defendants' hospital emergency departments, and such Surcharge is imposed on top of the other charges for specific items of treatment/services.  Further, the formula or algorithm which Defendants use to determine the level of Surcharge (1, 2, 3, 4 or 5) is also hidden from patients, making it virtually impossible for patients to know or seek to control the level or amount of the Surcharge they will be charged for their visit.  Further, the Surcharge is not mentioned or disclosed in Defendants' Contract, is not visibly posted on signage in or around Defendants' emergency departments where a patient would at least have an opportunity to learn of its existence, nor is it disclosed to patients verbally during the registration process.  Thus, Defendants failed to inform emergency care patients (including Plaintiff and the members of the Class) that they would be billed a substantial, undisclosed and unmentioned Surcharge on top of the charges for individual items of treatment furnished to the patient and which, if known about prior to treatment, would be a substantial factor in a patient's decision to remain at the hospital and proceed with treatment.  The high cost of medical services is a matter of great public concern and emergency care patients (including Plaintiff and the Class members) have a right to be informed of Defendants' substantial Surcharge before it is incurred.  Defendants' failure to disclose their Surcharges contributes to a lack of pricing transparency and a lack of informed consent by patients, who are generally totally unaware of such Surcharges or how they are determined.  Plaintiff is further informed, believes and alleges that many emergency care patients (including Plaintiff and the members of the Class) would choose to seek less costly treatment elsewhere if informed of Defendants' Surcharges prior to their being incurred.

4.10   Emergency patients have no reasonable opportunity to review or negotiate these Surcharges or to shop around before receiving care.  Accordingly, Plaintiff and the members of the plaintiff Class cannot be deemed to have agreed to pay these Surcharges.   Further, Plaintiff, the members of the plaintiff Class and most other emergency room patients suffer from one or more infirmities and are in distress when they present at an emergency room.    Were this not so they would have no need for emergency care.    Accordingly, in addition to being unaware of Defendants' Surcharge, Plaintiff and the plaintiff Class had greatly reduced bargaining power at the time they signed the Contracts.

4.11   Despite failing to disclose their Surcharges, Defendants add this substantial additional charge to an emergency patient's bill, even though (a) this Surcharge is not disclosed to patients in Defendants' Contract, or on signage posted in or around their emergency departments, or verbally to patients at the time of registration, (b) emergency care patients cannot reasonably be expected to be aware of this Surcharge, (c) Defendants are well aware that most emergency patients are unaware of Defendants' intention to add a Surcharge to their bill, and (d) knowledge of the existence and amounts of this Surcharge would be a substantial factor in influencing a reasonable patient's decision as to whether to remain and seek treatment at a Medical City Hospital emergency department.   The failure to disclose the Surcharge is particularly egregious in light of Medical City Healthcare's claim to "set the standard for what you and your family should expect when visiting a hospital."  Unlike a normal arms-length transaction between a buyer and seller, a patient seeking medical services at one of Defendants' emergency departments places a great degree of trust and confidence on the good intentions of the hospital to treat him or her fairly and with

compassion.  This trust and reliance is heightened by Defendants' Mission and Values statements, in which Defendants represent their Mission as "Above all else, we are committed to the care and improvement of human life" and their Values as "**A** – Accountability; **L** – Leadership; **W** – Willingness; **A** – Attitude; **Y** – 'You First'; **S** – Safety."

4.12    Defendants' failure to disclose their intention to bill Plaintiff and Class members a substantial emergency department Surcharge constitutes actionable consumer fraud or deceit because Defendants had exclusive knowledge that they would be billing Plaintiff and Class members such a Surcharge; this fact was not known or reasonably accessible to Plaintiff and the Class members at the time of their emergency department visits; and Defendants actively concealed their intention to bill Plaintiff and Class members such a Surcharge by failing to mention it in their Contract, in signage posted in the emergency room facilities, or verbally during registration.  A reasonable consumer would deem the fact that he or she would be billed a substantial Surcharge to be an important factor in determining whether or not to remain and obtain treatment at the hospital.

C.    **THE REPRESENTATIVE PLAINTIFF'S CLAIM**

4.13    On or about October 1, 2017, Plaintiff Pearl De Leon received emergency treatment/services at Medical City Las Colinas, where she was provided with and signed Defendants' form Contract.  While there Plaintiff received no notice or warning, either in Defendants' Contract, in posted signage in the emergency department or verbally at the time of registration regarding the substantial Surcharge that Defendants intended to add (and did add) to Plaintiff's bill on top of the individual charges for each item of treatment and services provided to her.  Plaintiff is a consumer as defined in the Texas,

Bus. & Com. Code § 17.45(4), a provision of the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 *et seq.* ("DTPA").

4.14    The total charges shown on the itemized bill provided to Plaintiff by the Hospital for the treatment/services rendered to Plaintiff was $22,274.40, which included a previously undisclosed Surcharge of $1,858.25 with a CPT Code 99284 and Plaintiff as the "Bill To" party.  This Surcharge was effectively concealed by Defendants' failure to disclose it prior to treatment, and was also hidden by Defendants' failure to describe or explain the charge, or what it was for, on the summary billing statement Defendants ultimately sent to Plaintiff.

4.15    Plaintiff was shocked, dismayed and aggrieved when she found out that she had been charged a Surcharge of $1,858.25, in addition to all of the individual items of treatment and services, as a result of merely being seen in one of Defendants' emergency facilities.

## V. CLASS ACTION ALLEGATIONS

5.1    Plaintiff brings this claim for declaratory relief on behalf of herself, the Class and all others similarly situated pursuant to 28 U.S. Code § 2201, Federal Rules of Civil Procedure 23 and 57, Tex. Bus. & Com. Code § 17.50(b)(4) and other applicable law.  The Class is defined as follows:

> All individuals who, within four years of Plaintiff's filing this action, received treatment and services at a Medical City Hospital emergency department in Texas, and who were charged an emergency department facility fee with a CPT Code designation of 99281, 99282, 99283, 99284 or 99285 (the "Class").

> Excluded from the Class are any officers or directors of Defendants, together with the legal representatives, heirs, successors, or assigns of Defendants, and any judicial officer assigned to this matter and his or her immediate family.

5.2     This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, predominance, typicality, adequacy of representation and superiority requirements.   Plaintiff seeks to represent an ascertainable Class with a well-defined community of interest in the questions of law and fact involved in this matter.

5.3     The members of the Class are so numerous that joinder of all members of the Class is impractical.  Plaintiff is informed, believes and alleges that the Class consists of at least tens of thousands of persons.

5.4     This action involves the question as to whether Defendants' uniform practice of failing to disclose, and subsequently billing emergency care patients, a substantial Surcharge is unfair, false, deceptive, and/or misleading, and constitutes a deceptive trade practice as defined by the DTPA.  This question predominates over any individual issues that might exist.

5.5     Plaintiff's claims are typical of the claims of the Class and Plaintiff is a member of the Class as defined.

5.6     Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff shares the same interests as all Class members because Plaintiff's claims are typical of those of other Class members.  Plaintiff has retained competent class counsel who is experienced in class action litigation and who will fairly and adequately protect the interests of the Class members.  Both Plaintiff and the members of the Class are consumers as defined in Tex. Bus. & Com. Code § 17.45(4), a provision of the DTPA.

5.7     This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class would create a risk of inconsistent

or varying adjudications with respect to individual members of the class which would establish incompatible standards for the parties opposing the class.

5.8    This action is properly maintained as a class action in that the prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

5.9    This action is properly maintained as a class action in that Defendants have acted or refused to act on grounds generally applicable to all the members of the Class and have engaged in a systemwide policy of billing emergency care patients a substantial undisclosed Surcharge, thereby making final injunctive and corresponding declaratory relief concerning the Class as a whole appropriate.

5.10    There are questions of law and fact common to the Class including, but not limited to:

(a)    Whether Defendants had a policy and practice of using a single, adhesive, admissions agreement for incoming patients in each of their emergency departments;

(b)    Whether Defendants had a duty to disclose to their emergency patients their policy of imposing Surcharges on top of the charges for the specific items of treatment and services provided before those patients incurred a Surcharge;

(c)    Whether Defendants had a policy and practice of failing to inform their emergency care patients of the existence and amounts of these Surcharges;

(d)   Whether Defendants had a policy and practice of concealing the Surcharge and associated information from their emergency care patients;

(e)   Whether Defendants had a policy and practice of concealing their formula or algorithm for determining the level of their Surcharge from their emergency care patients;

(f)   Whether Defendants knew that some patients would not have sought emergency services from Defendants had the Surcharge been disclosed prior to treatment or services being rendered;

(g)   Whether Defendants' Contract authorizes Defendants to bill Plaintiff and the Class members these Surcharges;

(h)   Whether Defendants' Contract contains a promise by patients to pay these Surcharges;

(i)   Whether Defendants' practice of billing undisclosed Surcharges to Plaintiff and Class members is an unconscionable billing practice;

(j)   Whether Defendants properly disclosed their Surcharges in their Contracts, on signage posted at or around their emergency departments or during the registration process;

(k)   Whether the acts and conduct of Defendants alleged herein render a declaration necessary and proper as to the rights and obligations of Defendants and the rights and obligations of Plaintiff and the Class;

(l)   Whether Defendants' acts and omissions complained of are unconscionable as defined by Texas common law;

(m)   Whether Defendants' acts and omissions complained of are an unconscionable action or course of action as defined in Tex. Bus. & Com Code § 17.45(5), a provision of the DTPA; and

(n)   Whether Defendants' acts and omissions complained of constitute one or more deceptive acts, practices and misrepresentations as defined in the DTPA.

5.11   A class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all Class members is impracticable and it would be virtually impossible for the Class members to efficiently redress their wrongs individually.   Even if all Class members could afford such individual litigation themselves the court system would benefit from a class action. Individualized litigation would present the potential for inconsistent or contradictory judgments, particularly because this action revolves around the question of whether Defendants have a "duty to disclose" their Surcharges, which is the same determination for every class member.   Individualized litigation would also magnify the delay and expense to all parties and the court system presented by the issues of the case.   By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court, as well as economy of scale and expense.

5.12   The definition of the Class is clear and the members of the Class are easily identifiable based on objective criteria.   Members of the Class can be identified using information that is kept by Defendants in the usual course of business and/or in the control of Defendants. Class members can be notified of the class action through publication and/or direct mailings to address lists maintained in the usual of course of

business by Defendants.

## VI. FIRST CAUSE OF ACTION: FOR DECLARATORY JUDGMENT

6.1     Plaintiff herein repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as though the same were set forth at length herein.

6.2     Plaintiff and the members of the Class are consumers as that term is defined in Tex. Bus. & Com. Code § 17.45(4), a provision of the DTPA, in force at the time Defendants committed the acts and omissions of which Plaintiff complains. Pursuant to the Declaratory Judgments Act, 28 U.S. Code § 2201, Fed. R. Civ. P. 57 and Tex. Bus. & Com. Code § 17.50(b)(4) Plaintiff requests that this Court issue a declaratory judgment declaring:

(a)     that Defendants' billing practices as they relate to Plaintiff and the Class are unconscionable as defined by Texas common law;

(b)     that Defendants' billing practices as they relate to Plaintiff and the Class members are an unconscionable action or course of action as defined by Tex. Bus. & Com. Code §17.45(5), a provision of the DTPA;

(c)     that the Contract does not authorize Defendants to charge the undisclosed Surcharges complained of;

(d)     that Plaintiff and members of the Class are liable to Defendants, under the Contract, for no more than the charges for the individual items of treatment/services provided; and

(e)     that Defendants' billing practices as they relate to Plaintiff and the Class are deceptive trade practices as defined in the DTPA and, more particularly, by Tex. Bus. & Com. Code §§ 17.46 and 17.50.

6.3    An actual controversy exists between Plaintiff and the members of the Class, on the one hand, and Defendants, on the other, relating to their respective legal rights and duties.  Plaintiff and the members of the Class contend that Defendants and the Medical City Hospitals have a duty to fully disclose their emergency room Surcharges to emergency room patients, as well as the basis on which the level of charge will be determined, prior to rendering services that result in such Surcharges being incurred.  Plaintiff and the members of the Class further contend that under Defendants' Contract they should only be required to pay Defendants' charges for individual items of treatment/services rendered, and not Defendants' undisclosed Surcharges.  In contrast, Defendants assert that they are entitled to bill a Surcharge to cover overhead and other costs of operating an emergency room, in addition to the individual items of treatment/services rendered, and have billed Plaintiff and members of the Class accordingly.  To resolve the ongoing disputes over Defendants' Surcharges, Plaintiff and the members of the Class are entitled to a determination as to whether Defendants have a "duty to disclose" their Surcharge in advance of such Surcharge being incurred, and are further entitled to a declaration and appropriate injunctive relief with regard to a patient's legal rights and duties and the construction of Defendants' Contract. Specifically, Plaintiff and the members of the Class are entitled to a declaration that Defendants' practice of charging a substantial undisclosed Surcharge in addition to the charges for the specific services and treatments provided is not authorized by Defendants' Contract, is violative of Texas common law, and is violative of the DTPA. This relief is authorized by the Declaratory Judgments Act, 28 U.S. Code § 2201, Federal Rule of Civil Procedure 57 and Tex. Bus. & Com. Code § 17.50(b) subparts (2) and (4).

6.4     Plaintiff and members of the Class are entitled to a further declaration that Defendants owed Plaintiff and the Class members a duty to disclose their intention to add a Surcharge to the patient's bill, in advance of providing treatment that would trigger such a Surcharge, because of (1) the substantial nature of Defendants' Surcharge, (2) the special relationship that exists between Defendants (on the one hand) and Plaintiff, members of the Class and emergency department patients generally (on the other), (3) the hidden nature of Defendants' Surcharge, (4) the general lack of knowledge of Plaintiff, the members of the Class and emergency department patients generally as to Defendants' intention to bill them such a Surcharge, (5) the lack of reasonable opportunity for Plaintiff, members of the Class and emergency department patients generally to find out about such a Surcharge, (6) the fact that Defendants are aware that many if not most patients are unaware of Defendants' intention to bill them a Surcharge, and (7) the fact that knowledge of such a Surcharge would be a material factor in a patient's decision to remain at Defendants' emergency department or seek less costly treatment elsewhere. Of particular significance in connection with Defendants' acts and practices complained of are Tex. Bus. & Com. Code § 17.46(b), subparts (12) and (24).

6.5     Plaintiff and the members of the Class are also entitled to declaratory and injunctive relief to prohibit Defendants from continuing to bill Surcharges without full and fair disclosure in advance of treatment that will trigger such Surcharges, and to prohibit Defendants from pursuing ongoing collection activity based on such Surcharges.

6.6     The declarations sought above are necessary and appropriate since Plaintiff and the Class have been and continue to be impacted financially by Defendants'

undisclosed Surcharges.  By granting the declaratory relief sought by Plaintiff and the Class this Court will clarify and resolve an ongoing and continuing dispute as to the rights and duties of the parties with regard to Defendants' Surcharges and billing practices.  Even those patients whose Surcharges have not yet been paid should not have to wait until collection efforts are under way before obtaining a legal determination of their obligations with respect to Defendants' Surcharges.  Finally, the declarations sought herein would benefit future emergency care patients of Defendants by bringing about increased pricing transparency and informed consent.

6.7    No monetary damages or restitution are sought in this petition.  However, Plaintiff has incurred and is entitled to recover costs and reasonable and necessary attorneys' fees and expenses in seeking this declaratory judgment pursuant to Tex. Bus. & Com. Code § 17.50(d) and Fed. R. Civ. P. 23(h).

6.8    Plaintiff will have given Defendants the written notice required by the DTPA and the opportunity to respond contemplated by Tex. Bus. & Com. Code § 17.505 by the time of the trial of this matter.

## VII. SECOND CAUSE OF ACTION: REQUEST FOR RELIEF UNDER DTPA

7.1    Plaintiff herein repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs 1.1 thru 5.12, and 6.4 thru 6.8, with the same force and effect as though the same were set forth at length herein.

7.2    Defendants have committed one or more deceptive trade practices, as defined in the DTPA, against Plaintiff and the members of the Class.  More particularly, Defendants' acts, practices and misrepresentations complained of constitute one or more violations of the following provisions of the DTPA: Tex. Bus. & Com. Code § 17.46(b) subparts (12) and (24) and Tex. Bus. & Com. Code § 17.50(a) subparts (1) and

(3).

7.3     Pursuant to Tex. Bus. & Com. Code § 17.50(b) Plaintiff and the members of the Class seek an order enjoining Defendants' acts and failures to act complained of herein, including but not limited to:

(a)     seeking collection of the undisclosed Surcharge from Plaintiff and the members of the Class;

(b)     seeking collection of Surcharges from future emergency room patients unless the Surcharge is clearly and conspicuously communicated to them prior to the same being incurred;

(c)     representing that the Contract authorizes Defendants to charge undisclosed Surcharges; and

(d)     seeking collection of more than the charges for the individual items of treatment/services provided to Plaintiff and the members of the class.

7.4     Pursuant to Tex. Bus. & Com. Code § 17.50 (b)(4), Plaintiff and the members of the Class seek any other relief which the Court deems proper.

7.5     Pursuant to Tex. Bus. & Com. Code § 17.50(d), Plaintiff and the Class seek their court costs and reasonable and necessary attorneys' fees.

## VIII. MOTION FOR CLASS CERTIFICATION

8.     Plaintiff hereby moves for class certification and requests a scheduling order to govern discovery and briefing regarding class certification issues.  Plaintiff will file a separate motion in connection with this request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for the following relief against Defendants:

1.      an order certifying that this action may be maintained as a class action against Defendants, appointing Plaintiff and her counsel to represent the Class, and directing that Defendants give reasonable notice of this action to the members of the Class;

2.      a declaration or declarations as prayed for herein;

3.      injunctive relief to enforce the relief prayed for herein;

4.      an order awarding Plaintiff and members of the Class the costs of suit including, but not limited to, reasonable attorneys' fees and expenses and expert fees; and

5.      such other and further relief as may be just and proper.

Respectfully submitted,

BLUMBERG BAGLEY PLLC

by:  _/s/ Daniel E. Blumberg_
      Daniel E. Blumberg
      Texas Bar No. 02512985
      daniel@blumbergbagley.com
      Texas Bar No. 00783581
      peter@blumbergbagley.com
2304 West Interstate 20 West, Suite 190
Arlington, Texas 76017
(817) 277-1500
Facsimile (817) 277-1170

LAW OFFICE OF BARRY KRAMER

by:  _/s/ Barry L. Kramer_
      Barry L. Kramer
      kramerlaw@aol.com
9550 S. Eastern Avenue, Suite 253
Las Vegas, NV  89123
(702) 778-6090

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2019, the foregoing document was served on counsel for Defendants via electronic mail pursuant to Local Rule CV-5.2(e).

*/s/ Daniel E. Blumberg*
Daniel E. Blumberg
